■ In the Matter of Sol Kravitz, Individually and as Chairman of 2101-11 Albemarle Road Tenants' Committee, Appellant, v. Frederic E. Berman, as City Rent and Rehabilitation Administrator, Respondent, and Great South Bay Company, Intervenor-Respondent.— In a proceeding under CPLR, article 78, to review and annul a determination of the respondent City Rent and Rehabilitation Administrator, who dismissed the protest of tenants concerning the grant of a 15% "fair return" rent increase, using a purchase price as the valuation base, petitioner, individually and as chairman of a tenants' rent committee, appeals from a judgment (described in the notice of appeal as an "order") of the Supreme Court, Kings County, entered January 24, 1966, which inter alia dismissed the proceeding. Judgment affirmed, without costs. No opinion. Christ, Acting P. J., Brennan, Hill and Hopkins, JJ., concur. Benjamin, J. dissents and votes to reverse the judgment and grant the petition, with the following memorandum: In my opinion, there was no rational basis for the Administrator's determination that the price paid for this property by the landlord was its fair value. On this record it seems obvious that the purchase of this property was part of a package deal involving a triangular transfer of properties; and that the obstensible price for this building was deliberately fixed at a figure that would enable the buyer to claim "hardship" and apply for a substantial rent increase on the theory of a fair return on purchase price rather than assessed valuation. All the contracts involved in this triangular exchange were executed simultaneously, all the closings were simultaneous, and the closing statement treated them as a package deal. The fact that the parties used the device of separate contracts does not negate the conclusion that this was truly a package deal, since this could well have been done for some other purpose, such as tax reduction or avoidance. The price purportedly paid for this property was somewhat more than nine times the gross rents, which is the same as a capitalization of the *gross* income at 11%. Allowing for depreciation, this would be an indicated return of hardly more than 2% on the investment. Such capitalization is wholly unrealistic, particularly since the subject premises was an old, rent-controlled building. More in keeping with the realities would be an 11% capitalization of the *net* rental income, and that would bring the true value of this property down to about the assessed valuation of $635,000. Unworthy of serious consideration is the landlord's claim that there had been several other offers for the property at figures ranging from 8¾ to 9¼ times the gross rents, since alleged offers are not proof of fair value. Nowhere in this record is there evidence of actual sales of comparable properties in the open market at these figures. What *is* significant in this record is the fact that only three weeks after the purchase of this property the buyer placed a $325,000 second mortgage on the property, and thus reduced its cash investment in the property to that amount; this $325,000 recoupment of cash investment is very close to the difference between the purported purchase price of $908,800 (which I consider grossly excessive), and the assessed valuation of $635,000 (which I consider the approximate fair value of the property); and this factor destroys one of the main props of the Administrator's determination, namely, her finding that over 54% of the purchase price had been paid in cash. On this whole record, it is my opinion that the purported purchase price of $908,800 was not the product of a bona fide, arm's length transaction at fair market value, and it was improper for the Administrator to use it, instead of the assessed valuation, as the index of value for the property.